IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 09-cv-01353-WDM-MJW

ROBERT A. MAY,

    Plaintiff,

v.

KYLE HOWARD WEBB,
LORRAINE HIGGINS WEBB, and
WIGGINS II, LLC, a Colorado limited liability company,

    Defendants.

## ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Miller, J.

This case is before me on the Motion for Partial Summary Judgment (Docket No. 36) filed by Plaintiff Robert A. May ("Plaintiff" or "Seller") and the Cross-Motion for Partial Summary Judgment (Docket No. 43) filed by Defendants Kyle Howard Webb, Lorraine Higgins Webb, and Wiggins II, LLC ("Defendants" or "Buyers"). I have reviewed the parties' written arguments and the evidence submitted with their briefs. For the reasons that follow, both motions will be granted in part and denied in part.

### Background[1]

This is a contract dispute concerning a term contained in a contract to sell real property. The underlying facts are relatively simple and the primary issues are a matter of contract interpretation and application.

---

[1] The following facts are taken from the parties' briefs and attached exhibits and are undisputed unless otherwise noted. I note that Plaintiff did not follow my follow my Pretrial and Trial Procedures regarding motions for summary judgment.

Plaintiff is the former owner of two commercial condominium units ("Units A and B") located in the Vail Spa Condominium complex (the "Spa") in Vail, Colorado. In 2001 or 2002, while Plaintiff owned the units, a fire damaged a portion of the complex. This occurred while a new fire sprinkler system was being installed. From 2001 to 2003, the Vail Spa Condominium Association (the "Association") required Plaintiff and other unit owners to pay special assessments relating to the repair and upgrade work undertaken after the fire. Plaintiff personally was required to pay a total of $130,000 in such special assessments.

Plaintiff sold Units A and B to Defendants Kyle Webb and Lorraine Webb in 2005.[2] As part of the agreement ultimately reached by the parties in their sale documents, the following provision was included:

> Any consideration received relating to, in connection with, or arising from the installation of the fire sprinkler system or fire damage, which installation or damage occurred on or before June 15th 2005, whether received from insurance coverage, from settlement, from suit or other legal proceedings, or by any other method, whether received before or after the Closing of this Contract, and whether initially received by Buyer or Seller shall be the property of and shall be paid to Seller.
>
> Buyer hereby agrees to pass on copies of all communications from the homeowner's association, attorneys, or other parties relating to the matter outlined above.

Ex. C to Plaintiff's Motion for Partial S.J. (Docket No. 36-4).

At the time of the fire, the Spa had a casualty insurance policy with State Farm; however, the insurer refused to pay portions of the costs resulting from the fire and other

---

[2] The units were thereafter transferred to Wiggins II, LLC; it appears that the individual Defendants are the members of Wiggins II.

required upgrades. The Association and State Farm thereafter filed a lawsuit against the design engineering firm, the general contractor, and a subcontractor involved in installing the new sprinkler system. The lawsuit was pending in July 2005 at the time the Defendants purchased the Units from Plaintiff. In November 2005, a judgment in the lawsuit resulted in a verdict in favor of the Association and against the general contractor. Judgment was entered against the Association as to the claims against the other parties. The Association was awarded $108,214.67 as a result of the judgment; it is unclear how much was actually collected or diminished by collection litigation. The Association thereafter initiated litigation against its insurance agent and against State Farm (the "Insurance Litigation"). The Insurance Litigation resulted in a settlement pursuant to which State Farm paid $2,729,330.50, net of attorneys' fees, to the Association.

The Association's Board of Directors decided to pay approximately one half of the net settlement proceeds from the Insurance Litigation to the unit owners according to the same percentage of interests used to compute their regular monthly assessments. The remaining proceeds were kept in a reserve account and have been spent or are allocated for various purposes unrelated to the fire.

Wiggins II, LLC, as owner of Units A and B, received $36,823.00 as its share of the portion of the settlement proceeds of the Insurance Litigation.

Plaintiff filed suit against Defendants in June 2009. The complaint contains the following claims for relief: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) request for an accounting; and (4) unjust enrichment. Docket No. 1. Defendants thereafter tendered a payment of $36,823.00 to Plaintiff. Defendants, in their Answer, denied that they owe Plaintiff anything or, alternatively, that they owe no more than

what they have actually been paid by the Association.

Plaintiff contends that the litigation proceeds obtained by the Association and retained by the Association for the benefit of condominium unit owners either in a reserve fund or in the Association's general accounts are monies "constructively" received by Defendants and should be paid to Plaintiff pursuant to the agreement. Plaintiff seeks an amount equivalent to 3.25% of the total proceeds received by the Association on the grounds that Units A and B represent 3.25% of the Spa complex. Plaintiff has made a demand on the Association that such amounts be paid to the Defendants so that they can be paid to him pursuant to the agreement. The Association has refused to do so.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## Discussion

Jurisdiction in this matter is based on diversity. 28 U.S.C. § 1332. Therefore, as the parties do not dispute, I apply the law of Colorado in resolving the issues. *Leprino Foods Co. v. Factory Mut. Ins. Co.*, 453 F.3d 1281, 1287 (10th Cir. 2006).

Interpretation of a contract is a question of law. *Ad Two, Inc. v. City and County of Denver, ex rel Manager of Aviation,* 9 P.3d 373, 376 (Colo. 2000). "A court's duty is to interpret a contract in a manner that effectuates the manifest intention of the parties at the time the contract was signed. The touchstone in determining the intention of the parties is the language of the written agreement. If the language is plain, clear and unambiguous,

a contract must be enforced as written." *Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003) (citations and internal punctuation omitted). Whether a contract is ambiguous is also a question of law for the court. *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310, 1314 (Colo. 1984). A contract is ambiguous when it is susceptible to more than one reasonable interpretation. *National Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P. 2d 741, 746 (Colo. 1992). If I conclude that a contract is ambiguous then its meaning is a question of fact to be determined by the finder of fact. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 919 (Colo. 1996).

  1. <u>Insurance Litigation Proceeds</u>

Defendants take the position that the settlement funds from the Insurance Litigation are not within the scope of the clause, which requires payment to the seller of any proceeds received "relating to, in connection with, or arising from the installation of the fire sprinkler system or fire damage . . . ." Defendants argue that the Insurance Litigation related to claims against the insurance agent for failing to procure appropriate insurance and against State Farm for breach of contract and bad faith. Defendants claim that at the time the parties executed the sale agreement, the litigation was not pending and therefore not intended to be included by the parties. I disagree.

First, I see no ambiguity in the plain language of this provision. The clause is broad and applies to all consideration received "relating to, in connection with, or arising from" the fire or sprinkler system. *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (arbitration clause containing similar language is considered "broad" and will include all claims that "touch on" or have a "significant relationship" with the agreement). The Insurance Litigation was clearly related to or connected with the fire, as it concerned the

5

insurer's failure to cover damage caused by the fire.  There would have been no claim had there been no fire; therefore, the fire damage had a significant relationship with the Insurance Litigation.  Moreover, had the parties intended to limit the clause to litigation then pending, language to that effect could certainly have been included.  The contract also makes clear that any proceeds received "after" the closing are the property of the seller, and these proceeds clearly fall within that category.  Because I see no ambiguity, extrinsic evidence is not needed to clarify the intent of the parties.

  2. <u>Amounts Retained by Association</u>

Plaintiff contends that the contract is unambiguous and that by its plain terms includes those funds held by the Association to be applied for the benefit of the complex and the unit owners.  He argues that because the funds are held as if in escrow for the benefit of the owners, the Defendants have "constructively" received them and so should pay him an equivalent amount.  Ex. D to Plaintiff's Motion for Partial S.J. (Docket No. 36-5) (pursuant to Association's bylaws, Association is required to "maintain a working capital account which shall be treated as an escrow account for each individual Owner.").

I agree with Plaintiff that the contract is unambiguous in this regard but disagree regarding his interpretation of its scope.  The plain meaning of the word "receive" implies actual possession or acquisition.  Even if this were to extend to "constructive" receipt, a term Plaintiff does not define, I do not see how the monies retained by the Association could be considered to have been received by Defendants in the absence of any control over or ability to dispose of those funds, or even evidence of actual direct benefit to the

6

Defendants.[3]  *See, e.g.*, Black's Law Dictionary (8th ed., 2004) (defining "constructive possession" as "Control or dominion over a property without actual possession or custody of it."). Plaintiff offers no evidence to show that Defendants as individuals or unit owners have the ability to direct how the settlement funds are used and have no control or dominion over them, much less any title or claim of right.  It is possible that the Association's use of the funds in a manner that directly benefits the Defendants could be consideration "received" by Defendants.  However, the record currently lacks any proof of direct benefit to Defendants.  The mere fact that Defendants obtain some indirect benefit as a result of the Association having replenished its funds from the settlement does not transform the word "receive" to encompass any advantage accruing to the Defendants.

In his reply, Plaintiff cites case law concerning creation of a constructive trust, even though he did not plead this equitable claim for relief in his complaint.  It is unclear from the context whether he claims a constructive trust should be imposed on the Association, which holds the funds, or on Defendants.  In either case, relief would be unwarranted.  A constructive trust arises in the presence of fraud, duress, abuse of confidence, or some other form of questionable or unconscionable conduct by which the trustee obtained property.  *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).  As noted, Defendants have

---

[3]"Constructive receipt" is a term of art in income tax law, and refers to income not actually reduced to possession but over which the taxpayer exercises some form of control.  26 C.F.R. § 1.451-2(a) ("Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given."); *Ross v. Commissioner*, 169 F.2d 483 (1st Cir.1948) (doctrine of constructive receipt treats as taxable to cash basis taxpayer income not yet reduced to possession but nevertheless controlled by the taxpayer).

not obtained any property; although they indirectly benefit from improvements or other expenditures by the Association on the Spa property, which otherwise might come from owner assessments, there is no trust property upon which a trust could be imposed. Moreover, there is no indication that Defendants obtained such a benefit through wrongful means. Similarly, although the Association has obtained property from which Plaintiff apparently feels he is owed some reimbursement, it was not obtained improperly. Had Plaintiff not sold the properties, he would be in a position to enjoy those same benefits. Therefore, even if Plaintiff had properly plead a claim for imposition of a constructive trust, such claim would fail.

Accordingly, it is ordered:

1. Plaintiff's Motion for Partial Summary Judgment (Docket No. 36) and Defendants' Cross-Motion for Partial Summary Judgment (Docket No. 43) are granted in part and denied in part.

2. I conclude as a matter of law that proceeds from the Insurance Litigation actually distributed to Defendants qualify as "consideration received relating to, in connection with, or arising from the installation of the fire sprinkler system or fire damage" under the parties' agreement. At this time, however, there is insufficient evidence to determine as a matter of law whether any

such funds retained by the Vail Spa Condominium Association have been "received" by Defendants as contemplated by the agreement.

DATED at Denver, Colorado, on July 7, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge